Morning. I want to say what a special pleasure it is to have our colleague Judge Hamilton participating remotely from South Carolina and I hope you will when he raises his hand he will have a question and we can pause and give him the opportunity to ask that. We're happy to have the three of us here and we'd be pleased to hear argument under Seal v. USA. Mr. Rahman. Thank you very much Judge Wilkinson. May it please the Court. My name is Sujit Raman. I'm the Appellate Chief for the District of Maryland appearing on behalf of the United States. Your Honor, for several hundred years it has been a fundamental principle of the District Court that an investigating grand jury has a right to every man's evidence and that any exceptions to that general rule are narrow and must be strictly construed. The District Court erred in this case by recognizing a novel parent-adult-child testimonial privilege that finds no basis in the Supreme Court's cases, finds no basis in this Court's cases, and finds no basis in the common law. Accordingly, we ask this Court to reverse the order quashing the grand jury subpoena, seeking Mr. Doe Jr.'s testimony, and to reinstate the subpoena so that the government can continue with this federal criminal investigation. I'd like to begin, Your Honors, by focusing first on this Court's cases. As the Court is aware, this Court has at least two rather lengthy opinions published over the last 30 years dealing with the notion of a family privilege, a parent-child privilege. The Jones opinion from 1982 and, of course, the Dunford opinion from 1998. Both of those opinions, in our view, make it very clear that there is no parent-adult-child testimonial privilege. In the Mr. Doe Jr.'s 20 at the time he asserted the privilege, but in Jones, we rejected the privilege even when it was asserted by a minor child. That's right, Judge Wilkinson. But the, it's interesting to me because it wasn't, the district judge was not insensitive to familial privileges. Mrs. Doe claimed a spousal privilege and she wasn't required to testify, and there were two minor children who lived in the home. They were not asked to testify. They were not and they will not be asked. So it's not as if the district court was running roughshod over family privileges. That's right, Your Honor, and I do want to emphasize that point, Judge Wilkinson. You know, the government has made a decision in this case, particularly because Mr. Doe Jr. is an adult and is available to testify or should be available to testify, that the government will not subpoena the younger, the minor children in this case. And there's a reason for that. The government, I think, is very sensitive to the idea that there are younger children living in this home. It is a traumatic experience to be hauled into a court and be asked to testify against one's parent. But there is a balance, and I think Rule 501, at the end of the day, Rule 501 is your legal hook in this case. And the question is, does the common law recognize any notion of a parent-adult-child testimonial privilege? And as we say in our briefing, I think this Court's holdings, not only Jones, which involved a 29-year-old adult, but also Dunford, which involved minor children. This Court's holdings make it very clear that there is no parent-adult-child privilege in this circuit. What would be the grounding of it? I mean, there's no basis in statute for it. There's no basis in the federal rule. So we would have to extract it from common law? I think that's right. And of course, common law would be the most I think Judge Wilkinson addressed your concern directly in its In Re Grand Jury case from the late 1990s, pointing out that, at the end of the day, these types of questions are best resolved by legislatures. There are all sorts of questions about the scope of a privilege like this. Who could invoke it? You know, stepchildren. What if a grandparent is really the person, at the end of the day, who's looking after the child? Is that person entitled or not entitled to this type of privilege? Who can invoke it? Is it the parent or is it the child, as in this case? And as we point out in our briefing, the reasoning that the District Court employed in this case to quash the subpoena, the notion that the parent and the child happen to be living in the same home, that they have a financial relationship, they have emotional ties, that reasoning could just as easily be invoked by a parent, by the accused person, by saying, I want to keep my son off the witness stand because we have this relationship. And in our view, that would actually be broader in scope than the spousal testimonial privilege that the Supreme Court rejected in Trammell. And I don't want to get too caught up in the doctrine here, but remember in Trammell, which is a decision from over 30 years ago, the Supreme Court said essentially that if a witness spouse wants to testify, he or she should be able to do that. So the accused spouse cannot keep a witness spouse off the witness stand. The reasoning of the District Court in this case is not really limited in that way, and indeed a parent could keep a child off the witness stand, at least under the reasoning that the District Court employed. So you've got essentially a parent-child privilege, which no court has ever recognized, at least in the federal side of things, that's broader in scope than a marital adverse testimonial privilege that the Supreme Court explicitly narrowed in a decision over almost 34 years ago. Would it matter who actually invoked the privilege? I think it could matter, Your Honor, particularly in child abuse cases. But would it have mattered here if the parent had been the one who invoked the privilege? Well, I think because the privilege does not exist, I don't think it would have mattered who. Right, right. But I'm saying in a theoretical sense, Your Honor, and that's why if you look at some of the state statutes, you know, there are only a kind of parent-child privilege. It's always a parent-minor-child privilege, not a parent-adult-child privilege. And in three of those states, it's a communications privilege, which as the Court is aware, communications privileges are actually distinct from testimonial privileges. But if, in the states that do recognize a parent-minor-child privilege, in many of those states, it's the child who can invoke the privilege, but the parent cannot. And again, there are If the child is a party, there are certain legislative balances that have been drawn about why the child... What evidence would you have as to what goes on within a home? Let's suppose the crime here was not keeping illegal weapons or growing drugs, but let's suppose it was spousal abuse. The person who might have the best insight into something like that would be the... might be an adult child living... So are we making the family into a, you know, making this into a 20-year-old adult child living in the home might provide very relevant testimony there. That's exactly right. And in fact, this was an 18-year-old child and the initial call was a domestic assault call. It was. Correct? It was. So this household is... There are issues. There are issues, Judge Thacker. And, you know, again, a point we made in our briefing. There are... There's certainly evidence in this case that the traditional marital sort of relationship, the traditional familial relationship in this particular case, unfortunately, has already been fractured. And that's the language that this Court used in Dunford. The mother essentially invited her son and the husband not to live at the home anymore, so that union has already, unfortunately, been fractured. The father, obviously, or somebody was bringing drugs and automatic weapons into a home in which younger children live. The government has all sorts of reasons to be legitimately concerned about what was happening in that home. And I think Judge Motz, I think the District Judge recognized that. Judge, the District Court said in several instances that the government has very legitimate concerns here. And I think the District Court was very clear about that. But, unfortunately, then went further in recognizing a privilege that, again, really no court in the history of federal reported decisions that I'm aware of has ever recognized, except this Augusto opinion in the Ninth Circuit, which, again, the Ninth Circuit itself on bonk have ruled that there is no familial privilege. And so Augusto was never really good law, even in the Ninth Circuit. You've got a welter of cases from across the Federal Circuit's Court of Appeals rejecting the idea of any kind of familial privilege, certainly any parent-adult child privilege. No state, apart from the four that I've mentioned, recognize a parent-child privilege. All of those, except for New York, which is a minor exception, all of those all of those states recognize a privilege by statute. So it's not by common law, it's by statute. No state in the Fourth Circuit recognizes a parent-child privilege. So these are all factors that, I think, inform the question of whether or not the district court erred. So I would sort of emphasize as well that a parent- child privilege is different from some of the other privileges that are recognized, whether it's the marital privilege, whether it's the priest- penitent privilege, whether it's the attorney-client privilege. Each of those long-recognized privileges have a very deep basis in the common law, have been recognized for centuries, have certainly been recognized by many states through affirmative, positive law. This particular privilege of the district court recognized, as I say, is really unrecognized in any jurisdiction that I'm aware of, at least in the character that the district court recognized here. As I said, even in the four states where there is some recognition of a parent- minor-child privilege, none of those privileges would actually help Mr. Doe Jr. here because, again, they're all communications privileges. And the district court went much further here in recognizing an adverse testimonial privilege. Even in some of the states that we talked about, it's often, you know, one particular party that can invoke the privilege or there's even diversity among the different states how they deal with it. All of which is to say, in the government's view, ultimately it's a legislative question whether or not this particular type of privilege should be recognized. Rule 501 is not the vehicle, especially where there is no history of this type of privilege being recognized. The difficult policy questions that are raised, the lack of any kind of precedent that we're aware of, whether it's from the Supreme Court or this court or any state court in this circuit. So for all those reasons, Your Honors, I don't want to labor my time. You don't have a privilege, you'd expect it to go through some kind of process, either the process for adoption of the federal rules of evidence, the process that is represented by the legislative process, or whatever, you know, before federal rules of evidence are changed, there's immense debate within the judicial conference. You have the particular rules committee for the rules of evidence and then you have the whole rules, the entire rules committee. So there are two committee considerations and then it's before Congress. And so there are all sorts of subsidiary questions about who invokes and how far the coverage extends. Right. You can't just do it. Well and Congress has has pointed out, Judge Walterson, just to follow up on that point, that privileges actually need to be specifically affirmed by statute, which is separate than other evidentiary rules, which ordinarily the courts or the Rules Committee can sort of put into place. And then if Congress fails to act, it comes into fruition. Privileges are one of the very few contexts where Congress has specifically legislated that Congress needs to affirmatively affirm it, rather than sort of the default position that if they, if Congress does not act, it comes into play. So I think you're on to a very good point, which is especially in the area of evidentiary privileges, which at the end of the day pose a limitation on the government's right to investigate the the adoption of these things. That's right. There is. And that process was not followed in this case. Hamilton, do you have any questions on this? No, not not for this attorney.  Mr. Ward. Good morning, Judge Hamilton. My name is Peter Ward. Excuse me, Judge Hamilton has a question. Oh, yes, Judge. I don't want to preempt your argument, but let me ask you something. In light of the Jones and the Dunford case, which Judge Wilkinson referred to, isn't this really a matter that should be addressed by Congress and not by this Court? Well, 501, as discussed in Trammell, states that the intention of 501 was not to freeze the lower privilege, rather it was to provide the courts with the flexibility to develop rules of privilege on a case-by-case basis and leave the door open for change. If the courts have the responsibility for that, if they don't have that responsibility, why does the why did the what is the rule say so that they do? But I'm not sure that answers your question, but let me, if I may, direct myself to the two cases that were Judge Hamilton's question when you equated this to an ordinary evidentiary ruling. It seemed like to me you were equating the creation of privileges with some evidentiary, routine evidentiary ruling on a case-by-case basis as to relevance or unfair prejudice or that kind of thing. And those are, they're really apples and oranges, aren't they? Yes, because we're talking about the application of some evidentiary rule, but 501, as discussed in Trammell, clearly says that the intent of the rule is to provide the courts, not the legislature, but to provide the courts with the flexibility to develop these evidentiary privileges on a, considering on a case-by-case basis. So it seems to me that the... It must be for those privileges that are already recognized. Well, Your Honor, if they're already recognized, they wouldn't be developing them... Not necessarily. There can be some privileges that might, the existence might be recognized, but the application might be left... Well, that's true. I mean, in, in the Hawkins case, there was a so-called Hawkins rule, which held that the spouse alone has the privilege to refuse to testify adversely. That's Hawkins at 358 U.S. I think previously it had been considered that either side could, could testify depending on whether they wanted to or not. But, and I think that, I hope that answers the question, but let me address the Dunford case. Judge Hamilton has another question. Oh, yes, sir. Judge Hamilton. I think what you're referring to is who has to invoke the privilege should one exist. Now, in this case, it wasn't the child, the adult child, that invoked that to one of the parents? No, sir. It was the adult child whom I represent, well, it was the child whom I represent, was appointed to represent Junior, who was subpoenaed to testify in the grand jury investigating his father. And the privilege point was raised on his, the Junior's behalf, not, not the father's behalf. And I'm not I think it's the person who was called to testify has the privilege, not the person against whom the testimony is being offered. I think that takes things too far, and I think that's sort of a corollary, corollary to the Hawkins rule. But, in any case, in Dunford, which was written by Judge Niemeyer and with Judge Monaghan and Judge Motz, all Baltimore lineup, I might say, on the panel, the question of privilege was discussed, and it was denied in that basis on the facts. In those cases in Jones and Dunford, I come back to the point, weren't those minor children? They were minor children, Your Honor. Well, isn't, I mean, isn't that different from a 20-year-old child? Here, the minor children were not required to testify. They weren't required to. They weren't required. Even in the case of minor children, we, our precedents rejected the privilege. Your Honor, they weren't required. This is a less sympathetic case, isn't it? Pardon? This is a less sympathetic case, especially if the attitude of the person trying to invoke the privilege of the government, maybe that's, maybe you disagree with that, but government describes the witness as sarcastic, evasive, hostile. I mean, I, it seems on a Jones and Dunford where the privilege was asserted by a minor child, and even then, this court did not recognize the privilege. On the, on the facts, because the, the defendant in that case, Dunford Sr., had physically abused his one daughter's head and threatened to shoot her. He had done the same thing with another daughter, going to her school, telling her to get the blank, blank, end of the car, hitting her and placing a knife up against her throat. The thrust of that holding was that any parental-child relationship that had existed was vitiated by that kind of conduct. There was no child-parent, real child-parent relationship existing in that case. In the Jones case, that was tried before Judge Butler, opinion written by Judge Monahan, and Judge Wilson on that panel. This is where a 29-year-old refused to answer grand jury questions involving his father. With respect to age, and apparently he was not only 29, he was fully emancipated. He wasn't dependent on his father and didn't have a close relationship at all, such as we have in this case. The court held, number one, that he was an emancipated adult child. He was only arguably adverse to his father, or his testimony would be, and there were, the fact that here the appellant himself has testified that even if he were required to provide testimony against his father, that his father would not cut him off and would not hold it against him. So how is he, the relationship, even harmed? Your Honor, I think that the, when we get to the relationship, and goodness knows everybody in this courtroom has had a father or has a father, it's more than just financial support or whatever. I think we have to look to what effect it would have on the witness, that is the parent claiming, the person claiming the child-parent relationship, in this case the son. He did not, he would not expect, and he testified that he had a very close, loving, warm relationship with his father. He loved his father, his father told him he loved the son, and there was nothing in the way of assaultive conduct or anything like that, as there was in the Dunford case, to dissipate, if you will, that familial bond or that familial relationship there. In Jones, as I said, the witness son was found, number one, to be emancipated. Now, although this young man was 20 years old when he was called upon to testify, he still lived with his father. He didn't have a job because he was attending college full His father provided everything that he needed, tuition, clothing, rent, whatever he needed to continue to pursue his goal of going to school. I can't recall the case now, but there was a case that said something to the effect that emancipation doesn't occur at the stroke of midnight of the person's 18th birthday. Although he was over 18, he was still very much dependent, and there was still very much of a dependent relationship with the father. Mr. Ward, I think we understand your argument. Is there anything further? No, Your Honor. Oh, just one thing. I'm sorry. There was a note at the end of the Jones case which said the following. Whether in changed factual circumstances the presence of other considerations will make a difference, we of course have no occasion to consider and do not now the age of the child and whether or not emancipation has occurred may or may not affect the decision as to whether any familial privilege exists. In this case, as I say, we have a chronological age, we do not have an emancipation, and we do not have any factors which destroy or do away with the bond between the father and the son. Thank you, Mr. Ward. Thank you, Your Honor. I appreciate it. Do you have anything further, Mr. Romano? Judge Wilkinson, just one factual point. The court observed a couple times that both Jones and Dunford involved minor children and just factually I just wanted to make sure the court was correct. Dunford involved minor children, Jones involved an adult 29-year-old son. Just with that factual correction, Your Honor. We appreciate that. Nothing further, Your Honor. Thank you. Mr. Ward, I see you're court-appointed. I want to express the appreciation of the court for your We will move into our second case.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Clyde H. Hamilton